UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLIE JEAN R.,[1]<br>Plaintiff<br>v.<br>ANDREW M. SAUL, Commissioner of Social Security,[2]<br>Defendant. | Case No. 2:18-cv-09813-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Billie Jean R. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11 and 20] and briefs addressing disputed issues in the case [Dkt. 17 ("Pl. Br."), Dkt. 18 ("Def. Br."), Dkt. 19 ("Pl. Reply")]. The matter is now

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

[2] Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

ready for decision. For the reasons discussed below, the Court finds that this matter should be remanded for further proceedings.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff first filed for SSI and DIB on September 24, 2009, alleging disability beginning December 30, 1995. [AR 99.] After Plaintiff's original applications were denied, Plaintiff appeared and testified at a hearing before Administrative Law Judge Charles Stevenson. [AR 99-108.] On February 25, 2011, ALJ Stevenson issued a written decision finding that Plaintiff was not disabled. [AR 99-108.] On May 7, 2014, the Appeals Council denied Plaintiff's request for review. [AR 112-116.] Because Plaintiff did not seek Federal court review within 60 days of the Appeals Council's decision, that decision became the final decision of the Commissioner. [AR 16.] See 20 C.F.R. §§ 404.981, 416.1481.

On July 11, 2014, Plaintiff filed new applications for SSI and DIB, this time alleging that she became disabled on October 31, 1989. After the Commissioner denied her second applications initially and upon reconsideration, Plaintiff had two hearings before ALJ James Goodman. [AR 39-45, 75-95.] In a decision dated December 18, 2017, the ALJ found Plaintiff not disabled. [AR 15-32.] The Appeals Council denied review. The present action followed.

In the December 2017 decision under review, the ALJ first set forth in some detail the decision of the prior ALJ finding Plaintiff to be not disabled on February 25, 2011. [AR 15-16.]

The ALJ then applied the five-step sequential evaluation process for assessing disability based on the later-filed application. [AR 15-32.] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 31, 1989, the alleged onset date. [AR 20.] At step two, the ALJ found that Plaintiff suffered from severe impairments including: post lumbar laminectomy for congenital spinal stenosis, degenerative disc disease of the lumbar spine, insulin dependent diabetes mellitus type II with nephrolithiasis, bilateral carpal tunnel

syndrome, major depressive disorder, anxiety disorder, and learning disorder. [AR 21.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 22.]

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work. [AR 25.] At step five, the ALJ determined that Plaintiff had no past relevant work but determined that based on her age (44 years old at the disability application date), high school education, and ability to communicate in English, she could perform representative occupations such as ampoule sealer (DOT 559.687-014), bench hand (DOT 700.687-062), and addressing clerk (DOT 209.587-010), and, thus, is not disabled. [AR 31.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite

the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. The ALJ Failed to Provide Legally Sufficient Reasons for Rejecting Plaintiff's Credibility

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting her testimony regarding her subjective symptoms and functional limitations. [Dkt. 17 at 7-11.] Specifically, Plaintiff contends the reasons the ALJ cited for discounting her credibility were not clear and convincing.

#### 1. Legal Standard

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (internal citation and quotations omitted). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if she "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina*, 674 F.3d at 1115 (internal citation and quotations omitted).

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or

4

third parties concerning the nature, severity, and effect of claimant's condition."
*Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

### 2. Analysis

Viewing the ALJ's decision liberally, the ALJ impliedly provided three reasons for finding Plaintiff less credible in general: (1) Plaintiff received conservative and routine treatment; (2) Plaintiff's daily activities conflicted with her reported limitations; and (3) there was a lack of objective medical evidence to support her complaints. [AR 29.]

#### i. Conservative Treatment

First, the ALJ noted that Plaintiff's treatment history suggests that she is not as limited as she alleges. [AR 29.] The ALJ noted that although Plaintiff received treatment including narcotic pain medication, physical therapy, pain relief injections and left carpal tunnel release surgery, her treatment history implies that she does not have a need for any specific treatment. [AR 29.] It is not exactly clear that the ALJ meant to indicate he found Plaintiff's treatment history as a whole to be routine and conservative, but he implied that because Plaintiff's "doctors have no over-arching treatment plan" aside from managed medication, that her allegations of disabling pain must be discounted on this basis. Nonetheless, the Court first considers whether the ALJ may have properly discounted Plaintiff's credibility because he found Plaintiff received conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotation marks and citation omitted).

Courts have characterized injections as both conservative and not conservative. Typically, in instances of limited or one-time injections, the courts have deemed the treatment conservative. *See, e.g., Jones v. Comm'r*, 2014 WL 228590, at *7 (E. D. Cal. Jan. 21, 2014) (occasional use of epidural injections in conjunction with massages and anti-inflammatory medications could be considered

5

conservative); *Veliz v. Colvin*, 2015 WL 1862924, at *8 (C.D. Cal. Apr. 23, 2015) (single steroid injection did not undermine ALJ's finding that plaintiff received conservative treatment); *Gonzales v. Colvin*, 2015 WL 685347, at *11 (C.D. Cal. Feb. 18, 2015) (treatment consisting of medication and a single steroid injection was conservative). In contrast, other courts have deemed this treatment not conservative, in particular when a claimant was treated with other injections and narcotic pain medication. *See, e.g., Yang v. Colvin*, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) (collecting cases finding spinal epidural injections are not conservative); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize steroid, trigger point, and epidural injections as conservative).

Similarly, the use of narcotic medication, by itself, may be considered conservative treatment. *See Huizar v. Comm'r*, 428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that plaintiff responded to conservative treatment, which included the use of narcotic medication); *Higinio v. Colvin*, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014) (holding that, despite the fact that plaintiff had been prescribed narcotic medication at various times, plaintiff's treatment as a whole was conservative); *Grisel v. Colvin*, 2014 WL 1315894, at *12 (C.D. Cal. Apr. 2, 2014) (use of narcotic pain medication was conservative when it provided relief and was not in combination with other treatments such as epidural injections). But, in general, the Ninth Circuit and its district courts have viewed the use of narcotic pain medication as non-conservative treatment, particularly when in conjunction with other treatments that were also not conservative. *See, e.g., Lapeirre–Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *Soltero De Rodriguez v. Colvin*, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative).

Here, Plaintiff did not receive only a single injection. She received multiple types of injections, narcotic and otherwise, on many occasions, all of which only provided temporary relief. [See AR 87 (Plaintiff testified about her epidural injections, AR 4493( Sandostatin injection); AR 4561(Plaintiff prescribed bi-weekly Toradol injections over the course of two months), 4563, 4566.] Plaintiff's series of injections over the course of her treatment undermines the ALJ's finding that this invasive type of treatment was conservative. As the ALJ also recognized, Plaintiff was regularly prescribed narcotic medication including Dilaudid (a narcotic pain reliever) and "oxycodone-Acetaminophen (PERCOCET)" in addition to her pain relief injections and physical therapy. [AR 4469, 4577.] Lastly, Plaintiff had carpal tunnel release surgery, which is indisputably not conservative. [AR 6036, 7687.] Accordingly, taken all together, any finding by the ALJ that Plaintiff received routine and conservative treatment was not supported by substantial evidence. If the ALJ intended this as a reason to discount Plaintiff's credibility, it was not clear and convincing.

### ii. Daily Activities

Second, the ALJ found that Plaintiff's reported daily activities are not consistent with her allegations of subjective symptoms/pain. [AR 29.]; *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (finding that if a Plaintiff's level of activities is inconsistent with her claimed limitations then the activities of daily living have a bearing on the Plaintiff's credibility). The ALJ reported that Plaintiff "could prepare simple meals, occasionally wipe down the television screen, and shop in stores." [AR 29.] The ALJ concluded these activities "suggest that [she] has a better capacity than she has stated in the record." [AR 29.]; s*ee Molina*, 674 F.3d at 1113 ("Even when those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitation impairment."). *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 693 (9th Cir. 2009) (although daily activities did not show

7

that the Plaintiff could work, "it did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

However, in making this conclusion, the ALJ mischaracterizes Plaintiff's testimony by omitting statements that explained and supported the allegedly disabling nature of her claimed pain and symptoms. Namely, in her Function Report, Plaintiff states that her meals are frozen or canned items that can be microwaved or put into the toaster oven. [AR 301.] She further states that she is not able to do any household chores and that friends or 'the agency' will occasionally send someone to assist her. When Plaintiff does occasionally wipe down the television or "pick up," this causes her "too much pain." [AR 301.] With respect to shopping, Plaintiff stated that she is rarely in stores unless she has someone to help her. [AR 302.] Plaintiff also stated that she does "95%" of her shopping by phone. [AR 302.] The ALJ's selective use of the record was error. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (ALJ who found that claimant's pain testimony was inconsistent with her daily activities – talking on the phone, preparing meals, cleaning her room, and helping to care for her daughter – erred, because claimant's testimony emphasized that in performing these tasks, she was assisted by her mother, her pain prohibited her from performing many related daily tasks, and after performing the cited daily activities, she often needed to rest, including by napping); *see also Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result"). Thus, this second reason proffered by the ALJ is not properly supported and does not constitute a clear and convincing reason for rejecting Plaintiff's pain testimony.

### iii. Lack of Objective Evidence

Lastly, the ALJ concluded that the objective medical evidence was inconsistent with Plaintiff's testimony regarding her limitations. [AR 29.] It is well-established that an "ALJ may not discredit a claimant's subjective testimony

8

on" the sole basis that "no objective medical evidence" supports the claimant's testimony as to "the severity of the subjective symptoms from which he suffers." *Light v. Comm'r of Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Indeed, "it is the very nature of excess pain to be out of proportion to the medical evidence," and thus, a finding that a claimant is not credible because his pain testimony is out of proportion to the medical evidence is an "inadequate reason." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). While the lack of medical evidence to support a claimant's allegations of disabling pain and symptoms "is a factor that the ALJ can consider in his credibility analysis," it "cannot form the sole basis for discounting pain testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Thus, the ALJ's last reason, on its own, is inadequate to support his adverse credibility determination, because the asserted failure of the medical record to corroborate Plaintiff's subjective symptom and pain testimony fully is not, by itself, a legally sufficient basis for rejecting such testimony. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ may not make a negative credibility finding "solely because" the claimant's symptom/pain testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Comm'r of Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Light*, 119 F.3d at 792 ("a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of the [symptoms]."). The ALJ's last reason, therefore, is not clear and convincing and cannot save the ALJ's adverse credibility determination. As there is no basis for finding this error to be harmless, reversal is required.

**B.     Other Issues**

Plaintiff contends that the ALJ's Decision is erroneous in two additional respects: (1) that the ALJ erred in failing to properly consider her fibromyalgia and

gastrinoma cancer at step two and (2) the ALJ failed to provide specific and legitimate reasons to reject the opinion of her treating physician. In light of the Court's conclusion that the case be remanded, it does not address the other issues raised by Plaintiff, except to note that none of the issues presented would warrant a remand for benefits. However, given the errors in the ALJ's opinion, the ALJ should address each of Plaintiff's contentions of error on remand.

## V. CONCLUSION

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* A remand for an immediate award of benefits is appropriate "only in rare circumstances." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (internal citation omitted).

The Court finds that remand is appropriate because the circumstances of this case do not preclude the possibility that further administrative review could remedy the ALJ's errors. On remand, the Commissioner must re-evaluate Plaintiff's pain/subjective symptom assertions and testimony properly, which in turn may lead to the formulation of a new RFC and the need for additional vocational expert testimony. The Court therefore declines to exercise its discretion to remand for an immediate award of benefits. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for

additional agency investigation or explanation, "except in rare circumstances"); *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.").

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the Decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: March 30, 2020

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE